ASHANTI PRODUCTIONS
28 Burns Street
Glen Cove, New York 11542

October 21, 1997

Mr. Genard Parker
T.E.A.M. Entertainment, Inc.
4622 Bronx Blvd.
Bronx, New York 10470

Dear Genard:

    The following when countersigned by you will constitute this the agreement between us pertaining to the amendment of the agreements between us dated February 18, 1997 and June 18, 1997 (collectively hereinafter referred to as the "Recording Agreements").

    In consideration of the mutual covenants made herein and certain mutual valuable consideration herein provided, we agree to amend the Recording Agreements as follows:

1.    (a)    We mutually agree to suspend the term of the June 18, 1997 Recording Agreement for a period of the sooner of (i) thirty (30) days, commencing as of the date hereof; or (ii) until the date of execution of an exclusive recording agreement between Ashanti Douglas and/or Ashanti Productions and Noontime Music, Inc. (the "Noontime Agreement").

    (b)    In the event we do not enter into the Noontime Agreement within thirty (30) days from the date hereof, then the Term of the June 18, 1997 Recording Agreement shall continue, with a thirty (30) day extension added thereto by reason of the suspension.

    (c)    In the event we do enter into the Noontime Agreement as provided above, then the Term of the Recording Agreements shall terminate and expire as of the date of execution of the Noontime Agreement, whereupon, the


PLAINTIFF'S EXHIBIT 3

terms and conditions set forth below shall control and govern our rights and obligations between ourselves and you and shall supercede the terms, conditions and other provisions contained in the Recording Agreements.

2.  You shall be entitled to participate in the production of my albums recorded pursuant to the Noontime Agreement as provided below.

   A. First Album

   (a) You shall have the right to produce two (2) masters for my first album recorded pursuant to the Noontime Agreement. You shall be paid an all-in recording fund in the amount of $25,000 for each said two (2) masters ($10,000 of which, per master shall be deemed to be a recoupable producer' fee advance) exclusive of mastering costs and fees or advances payable to Ashanti Douglas or us for recording. Said advance shall be payable to you one half (1/2) upon the commencement of recording and the balance upon the delivery to and acceptance of the masters by Noontime Music, Inc. ("Noontime").

   (b) In the event, at our and Noontime's request, but subject to your approval, you should produce additional master recordings for my first album, then you shall be paid an additional all in recording fund for each such additional master in an amount equivalent to a pro-rated share of the net recording fund for my first Noontime album. Your share shall be calculated by determining the total net sum remaining in the Noontime recording fund for the first album after having deducted our full artist advance and all funds paid to you for the production of the two (2) master recordings described above ("net recording fund"); then multiplying the net recording fund by a fraction, the numerator of which is the number of additional master recordings to be produced by you and the denominator of which is the total number of master recordings to be embodied on such album (not to exceed twelve (12) masters). Said advance(s) shall be paid to you one half (1/2) upon the commencement of recording and the balance upon the delivery to and acceptance of the master recordings by Noontime.

   (c) Subject to your full and timely performance of your production obligations hereunder, and provided you are not in breach of any of your material obligation to us or Noontime, we shall instruct Noontime and its distributor to credit your account and pay you the following royalties:

(i) With respect to U.S.N.R.C. net sales of records, disks and tapes embodying solely the masters produced hereunder: four (4%) percent of the suggested retail selling price or eight (8%) percent of the applicable wholesale or distributor price, as applicable. Notwithstanding the foregoing, you shall be entitled to receive a non-pro rated royalty of not less than one (1%) percent of the suggested retail selling price (or two (2%) percent of the wholesale or distributor price, if applicable) for U.S.N.R.C. net sales of my first album, second album and third album recorded pursuant to the Noontime Agreement.

(ii) Your royalties shall be calculated, determined and paid in the same manner and at the same times as are the royalties payable to us pursuant to the Noontime Agreement, including but not limited to reductions for sales outside of U.S.N.R.C., singles, EPs, packaging deductions, premium and budget line sales, free goods, compact disk, DAT and new technology reductions, sales outside of the United States, etc. Said royalties shall be payable to you retroactive to record number one after we or our distributor have recouped all recording costs attributable to the subject album (exclusive of artist advances and producer fees paid to you) at Noontime's net production company rate.

(iii) We shall direct and authorize Noontime and its distributor to render royalty accountings and payments directly to you. In the event they should fail to do so, we shall render royalty accountings to you within thirty (30) days after our receipt of same from Noontime.

A. Second and Third Albums

(a) In the event we should record a second and third album pursuant to the Noontime Agreement then the following terms and conditions shall apply with respect to your participation on such album(s).

(b) We shall use our best efforts to cause Noontime and its distributor to engage your services to produce up to three (3) master recordings on each such album, provided however, neither we nor Noontime shall be under any obligation to so engage your services.

(c) In the event, at our and Noontime's request you should produce master recordings for our second and/or third album(s), then you shall be paid an all in recording fund advance for each such master produced by you. The amount of the recording fund for each master produced by you shall be an amount equivalent to a pro-rated

3

share of the net recording fund for each such album. Your share shall be calculated by determining the total applicable recording fund less the artist advance payable to us for such album ("net recording fund"); then multiplying the net recording fund by a fraction, the numerator of which is the number of masters to be produced by you for the applicable album and the denominator of which is the total number of master recordings to be embodied on each such album, not to exceed twelve (12). Said advance(s) shall be paid to you one (1/2) half upon the commencement of recording and the balance upon the delivery to and acceptance of the master recordings by Noontime.

(d) Subject to your full performance of your production obligations hereunder, and provided you are not in breach of any of your material obligations to us or Noontime, we shall instruct Noontime and its distributor to credit your account and pay you royalties equivalent to and subject to those amounts, terms and conditions set forth in subparagraphs 2A(c) above.

(e) In the event, with respect to our second or third Noontime album, Noontime should not engage you to produce at least three (3) master recordings, then you shall be compensated for each master less than three (3) produced by you on each album as follows:

 (i) You shall be paid an advance, recoupable against royalties otherwise payable to you equivalent to one-third (1/3) of the pro-rated net recording fund advance which would have been payable had you actually produced the master recording(s) in question as provided in subparagraph B(c) above; and

 (ii) A non- pro rated royalty of one (1%) percent for U.S.N.R.C. net album sales as described and calculated above.

(f) Notwithstanding anything to the contrary set forth above, in the event you do not produce any masters for the second or third album and the immediately preceding album recorded and released pursuant to the

4

Noontime Agreement does not achieve at least one (1) of the following conditions:

(i) minimum U.S.N.R.C. net sales of 500,000 albums; or
(ii) minimum U.S.N.R.C. net sales of 500,000 units of a single record produced by you; or
(iii) a single record produced by you and embodied on such preceding album achieves Top 10 on the Billboard magazine Top R&B Singles (or equivalent re-titled) chart,

then the royalty payable to you with respect to the second and/or third album(s) shall be fifty (50%) percent of that set forth below, but not less than a non-pro rated royalty of one (1%) percent of the suggested retail selling price (or two 2%) percent of the wholesale or distributor price, if applicable) for U.S.N.R.. net sales of such second and third albums. Additionally, in such event, the advances otherwise payable to you as provided above shall likewise be reduced by fifty (50%) percent.

3. It is mutually agreed that you and we shall execute such additional agreements or documents as may be appropriate or requested to effectuate the purposes of this Agreement.

4. In the event the Term of the Recording Agreements should be terminated as provided in paragraph 1(c) above, then you and we shall mutually release and discharge each other from and against any and all claims, debts, demands, liabilities or other obligations whatsoever; whether known or unknown, related to or arising from the Recording Agreements.

5. You shall be afforded customary producer's credit as the producer of each Master produced by you hereunder on all liner notes, label copy and one-half (1/2) or larger page ads promoting the masters. We


shall afford you a special "thank you" acknowledgement in the liner notes for each of the first three Noontime albums on which you have produced any masters.

                Very truly yours,

                ASHANTI PRODUCTIONS

                By: *Ashanti Douglas*
                      Ashanti Douglas

                By: *Tina Douglas*
                      Tina Douglas

ACCEPTED AND AGEED TO

T.E.A.M. ENTERTAINMENT, INC.

By: _____
    Genard Parker

## EXHIBIT A

The undersigned, legal guardian of Ashanti Douglas ("Minor"), has read the foregoing agreement and as an inducement to enter into the foregoing agreement, warrants and represents to Company that (a) Minor will fully perform all of her obligations pursuant to the foregoing agreement; (b) the undersigned consents to the execution and performance of the foregoing agreement; (c) until the foregoing agreement has been approved by a court of competent jurisdiction, the undersigned personally guarantees Minor's performance of all of her obligations thereunder and assumes personal liability therefor; (d) the undersigned agrees to be bound by the obligations contained in the foregoing agreement which pertain to the Minor; (e) Company shall have no obligation to the undersigned; and (f) the undersigned shall indemnify and hold Company harmless from any act, error omission of the undersigned and of Minor.

AGREED TO AND ACCEPTED:

*[signature]*
Tina Douglas, the legal guardian
Of Ashanti Douglas, on behalf of
Herself and her daughter

7